UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

GABRIEL ANTHONY OLIVAS, ET AL.,

    Plaintiffs,

v.                                  **No. 4:20-CV-0007-P**

CITY OF ARLINGTON TEXAS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This case has a tortured past. Twice-appealed, twice-reversed, and twice-remanded by the Fifth Circuit,[1] the Court now considers Defendant City of Arlington Texas's motion to dismiss Plaintiffs Selina Marie Ramirez and Gabriel Anthony Olivas's *Monell* claim. ECF No. 101.[2] Because the Plaintiffs failed to allege a constitutional violation supporting their *Monell* claim, the Court **GRANTS** Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 101.

## FACTUAL BACKGROUND

In short, City of Arlington police officers responded to a call from Plaintiff Gabriel Anthony Olivas that Olivas's father was threatening to commit suicide and burn down the house. ECF No. 93 at 7. One of the three responding officers, Caleb Elliott, entered the bedroom where he found Olivas's father ("the decedent") holding a gas can. *Id.* at 9. Officer

---

[1] *See Ramirez v. Guadarrama*, 3 F.4th 129, 135–36 (5th Cir. 2021) (reversing the district court's denial of qualified immunity after concluding that the two officers who tasered a man that they knew was doused in gasoline causing him to erupt in flames and die from his injuries did not use excessive force); *Ramirez v. City of Arlington*, No. 21-10856, 2022 WL 3644197, at *2–3 (5th Cir. Aug. 24, 2022) (reversing the district court's dismissal of Plaintiffs' *Monell v. N.Y.C. Department of Social Services*, 436 U.S. 658 (1978), claim for failing to give Plaintiffs notice and an opportunity to respond).

[2] Because Defendant filed an amended motion to dismiss (ECF No. 101), the Court **DENIES as moot** Defendant's original motion to dismiss the second amended complaint (ECF No. 100).

Elliott could smell gasoline, but the decedent's clothing appeared to be dry. *Id.*

Concerned that the gasoline vapors could start a fire if the officers tased the decedent, Officer Elliott holstered his taser and warned the other two officers of the danger. *Id.* at 9–10. The other officers did not listen, instead aiming their tasers at the decedent. *Id.* at 10. Without any warning, Officer Elliott "unholstered his pepper spray, shook it, then advanced in front of the other two officers to approximately six feet from" the decedent. *Id.* The decedent then poured gasoline over his head, so Officer Elliott quickly sprayed the decedent in the face with pepper spray, blinding him. *Id.* at 10–11.

As the decedent "became agitated" from the pepper spray, Officer Elliott and one of the other officers saw that the decedent was in possession of a lighter. *Id.* at 11. This prompted the other two police officers to fire their tasers at the decedent, causing him to burst into flames. *Id.* at 12–16. The decedent died from his burns a few days later. *Id.* at 16. Though all three officers knew that the decedent would catch fire if tased (*id.* at 12–16), the City of Arlington did not discipline or retrain any of the officers (*id.* at 17).

Plaintiffs therefore sued the City of Arlington under 42 U.S.C. § 1983.[3] *Id.* at 38. Relevant to the only remaining claim before the Court, Plaintiffs contend that the City of Arlington's policies about escalation of force, providing "less lethal" weaponry, requiring officers to warn before using force, and disciplining officers were the "moving force[s]" behind the decedent's death. *Id.* at 32–38. Defendant moves to dismiss this case under Rule 12(b)(6). ECF No. 101.

## LEGAL STANDARD

To survive a motion to dismiss for "failure to state a claim upon which relief can be granted," FED. R. CIV. P. 12(b)(6), a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[3] For a more extensive recitation of the facts and description of Plaintiffs' § 1983 claims against the two officers who tased the decedent, see *Ramirez*, 3 F.4th at 132.

(2007)). The Court accepts all well-pleaded facts as true, drawing all inference in favor of and viewing all facts in the light most favorable to the nonmoving party. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

## ANALYSIS

There are three elements to a *Monell* claim: (1) a policymaker who (2) promulgates a policy or custom (3) that is the moving force behind a constitutional violation. *Monell*, 436 U.S. at 694; *Peña v. City of Rio Grande*, 879 F.3d 613, 621 (5th Cir. 2018). The Court need only address the constitutional violation part of the third element because it is dispositive here.

Plaintiffs assert that the constitutional violation at play in their *Monell* claim is excessive force in violation of the Fourth Amendment. ECF No. 39 ¶ 85. To state an excessive force claim, a plaintiff must allege "(1) [an] injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (citations omitted). "The determination of whether a plaintiff's alleged injury is sufficient to support an excessive force claim is context-dependent and is directly related to the amount of force that is constitutionally permissible under the circumstances." *Id.* (quotation omitted).

As an initial matter, the Fifth Circuit already held that the two officers who tased the decedent and consequently caused him to catch fire did not use excessive force. *Ramirez*, 3 F.4th at 136–37. The Court therefore cannot relitigate whether the two officers' conduct amounts to excessive force. *See United States v. Hankton*, 51 F.4th 578, 606 (5th Cir. 2022) (applying claim preclusion). So the only conduct that the Court may consider in determining whether there is a constitutional violation is Officer Elliott's use of pepper spray on the decedent.

Plaintiffs alleged an actual injury—the first element of excessive force—because the decedent was blinded by the pepper spray. ECF No. 93 at 11. Plaintiffs counter that Officer Elliott's actions set in motion a series of events that ultimately resulted in the decedent's death, so the

actual injury here is the decedent's death, not temporary blindness. ECF No. 102 at 29–30. Assuming arguendo that Plaintiffs' theory is plausible—an assumption about which the Court is dubious—Plaintiffs nevertheless fail to establish the second and third elements of their excessive force claim. So whether the actual injury was the decedent's temporary blindness or his ultimate death is inconsequential: Plaintiffs still fail to assert a constitutional violation in support of their *Monell* claim.

Courts often consider the second and third excessive force elements together. *Solis*, 31 F.4th at 982. When analyzing these elements, the Court considers four factors: (1) the severity of the crime; (2) whether the suspect poses an immediate threat to others; (3) whether the suspect is actively resisting arrest or attempting to flee; and (4) the speed at which the officers resort to force. *Id.* at 982–83 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017)).

Many of these factors were already litigated in *Ramirez*, so the Court cannot relitigate them here. *See Hankton*, 51 F.4th at 606; *Ramirez*, 3 F.4th at 134–35. *First*, the severity of the threatened crime—i.e., felony arson—is "considerable," thus weighing against excessive force. *Ramirez*, 3 F.4th at 134–35 (citing TEX. PENAL CODE § 28.02).

*Second*, the decedent "posed a substantial and immediate risk of death or serious bodily injury to himself and everyone in the house." *Id.* at 135. It reasoned that the decedent "was covered in gasoline[,] . . . had been threatening to kill himself and burn down the house[,] . . . appeared to be holding a lighter[,] . . . [and] there were at least six other people in the house, all of whom were in danger" at the time. *Id.* Thus, the second factor also weighs against excessive force.

*Third*, the Fifth Circuit concluded that whether the decedent was actively resisting arrest or attempting to flee was "of minimal relevance," given that the facts of this case did not lend themselves to the decedent attempting to flee or evade arrest. *Id.* So this factor is neutral.

4

The Fifth Circuit did not consider the fourth factor—albeit, the fourth factor was created by the Fifth Circuit, whereas the first three factors were articulated by the Supreme Court. *Compare Graham*, 490 U.S. at 396, *with Trammell*, 868 F.3d at 342. Upon considering the factor for the first time here, the operative complaint is unclear as to the time that elapsed from when the officers arrived at the scene and when Officer Elliott pepper sprayed the decedent. *See* ECF No. 93 at 4–12. But the complaint states that enough time passed for Officer Elliott to recognize that the decedent possessed gasoline, tell the two other officers not to tase the decedent because he would catch fire, holster his own taser, draw his pepper spray, and step in front of the other two officers to spray the decedent. *Id.* at 10–12. The complaint also states that the officers "had the time and opportunity" to issue a command or warn the decedent that they planned on using force against him. *Id.* at 10. Viewing these allegations in the light most favorable to Plaintiffs, the Court concludes that the fourth factor weighs in favor of excessive force.

On balance, the relevant factors indicate that, when viewing Officer Elliott's actions from "a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *Graham*, 490 U.S. at 396, the decedent's Fourth Amendment rights were not violated. This conclusion clearly flows from the Fifth Circuit's analysis in *Ramirez*; if the two officers who tased the decedent knowing that he would erupt in flames did not use excessive force, then Officer Elliott's use of pepper spray to try to subdue the decedent and avoid causing him to catch fire is not excessive force. There is therefore no constitutional violation here, and Plaintiffs consequently failed to allege a *Monell* claim.

## CONCLUSION

To state a prima facie *Monell* claim, Plaintiffs must allege a constitutional violation. 436 U.S. at 694. Plaintiffs here allege that the officers violated the decedent's Fourth Amendment right to be free from excessive force. The Fifth Circuit, however, already held that the two officers who tased the decedent and caused him to catch on fire and ultimately die from his injuries did not use excessive force. *Ramirez*, 3 F.4th at 134–37. The only remaining officer used pepper spray on the decedent before he was tased. The Court concludes that this use of force

was not clearly excessive and unreasonable under the circumstances. Because Plaintiffs failed to state a constitutional violation in support of their *Monell* claim, the Court therefore **GRANTS** Defendant's motion to dismiss and hereby **DISMISSES** all claims against Defendant with prejudice.[4]

**SO ORDERED** on this **23rd day of January 2023**.

*Mark T. Pittman*

**MARK T. PITTMAN**
**UNITED STATES DISTRICT JUDGE**

---

[4] This Court's standard practice is to allow claimants one opportunity to amend their pleadings prior to dismissing their claims with prejudice. *See In re American Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 567–68 (N.D. Tex. May 25, 2005) (Fitzwater, J.) (highlighting the Fifth Circuit's norm of allowing litigants an opportunity to cure pleading deficiencies prior to dismissal). However, the Court is disinclined to allow an opportunity to amend when it is clear that the pleading defects are incurable. *Id.* at 568. In the eyes of the Court, that is the case here because there is no underlying constitutional violation supporting Plaintiffs' assertion of *Monell* liability against Defendant. Besides, Plaintiffs have already amended their complaint twice. *See* ECF Nos. 1, 19, 93. Dismissal with prejudice of these claims is therefore appropriate, and Plaintiffs' alternative request for leave to amend is **DENIED**. *See* ECF No. 102 at 30.